FILED
United States Court of Appeals
Tenth Circuit

March 2, 2022

Christopher M. Wolpert
Clerk of Court

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JORGE ANTONIO MEDINA ESCARSIGA, a/k/a Tono,

    Defendant - Appellant.

No. 21-6043
(D.C. No. 5:18-CR-00260-SLP-3)
(W.D. Okla.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **MATHESON**, **PHILLIPS**, and **MORITZ**, Circuit Judges.[**]
_____

The district court applied a four-level aggravating-role enhancement under § 3B1.1(a) of the United States Sentencing Guidelines in calculating Jorge Antonio Medina Escarsiga's advisory guideline range. On appeal, Medina[1] argues that this

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

[1] Because Jorge Antonio Medina Escarsiga's attorney and the government refer to him as "Medina," we do the same.

was error, because he does not qualify as an "organizer or leader." Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## BACKGROUND

In July 2016, law-enforcement officials in Oklahoma began investigating a large-scale drug conspiracy involving the Irish Mob Gang that spanned Oklahoma, Kansas, Texas, California, and Mexico.[2] The investigation eventually led to a 97-count superseding indictment with charges against Medina and 54 co-conspirators.

In the superseding indictment, Medina was charged with one count of drug trafficking under 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A), and one count of conspiracy to launder money under 18 U.S.C. § 1956(h). Medina pleaded guilty to both counts.

Because Medina was responsible for trafficking more than 450 pounds of methamphetamine, as well as some heroin, the probation office calculated Medina's base-level offense at 38—the maximum level under § 2D1.1(c)(1). To this, it added an additional 10 offense levels. First, the probation office recommended three separate two-level specific-offense characteristics: (1) the operation involved firearms, under U.S.S.G. § 2D1.1(b)(1); (2) the drugs were imported from Mexico, under U.S.S.G. § 2D1.1(b)(5); and (3) Medina was convicted of money laundering, under U.S.S.G. § 2S1.1(b)(2)(B). Second, it recommended a four-level aggravating-role adjustment, under § 3B1.1(a).[3] Against the adjusted offense level of 48, the

---

[2] The Irish Mob Gang is an Oklahoma-based prison gang.

[3] On appeal, Medina contests only the aggravating-role adjustment.

probation office recommended a three-level reduction for Medina's timely acceptance of responsibility. This left Medina's total offense level at 45. But when a total offense level exceeds the sentencing table's maximum offense level of 43, the guidelines instruct us to apply an offense level of 43. *See* U.S.S.G. Chapter 5, pt. A, cmt. n.2. Combined with Medina's criminal-history category of I, this led to an advisory guideline range of life imprisonment.

Before sentencing, Medina objected to the aggravating-role enhancement. He argued that the court lacked sufficient evidence to support a preponderance finding that he had supervised or controlled any other member of the drug conspiracy, or that he had any decision-making authority within the operation.

After reviewing the evidence submitted by Medina and the government, the district court overruled Medina's objection. But it varied downward from the guideline's recommendation of life imprisonment and sentenced Medina to 384 months. Medina now appeals.[4]

---

[4] Medina argues that without § 3B1.1(a)'s four-level enhancement, his total offense level would have been 39, resulting in a guideline recommendation of 262 to 327 months' imprisonment. This is incorrect. We reduce Medina's total offense level to 43 only if after all the calculations are made, it exceeds that number. *See* U.S.S.G. Ch. 5, pt. A, cmt. n. 2; *United States v. Craig*, 808 F.3d 1249, 1253 (10th Cir. 2015) (reducing a defendant's total offense from 49 to 43 *after* already crediting a reduction for acceptance of responsibility under § 3E1.1). So even if Medina had received a mere two-level aggravating-role adjustment under § 3B1.1(c), his total offense level would have remained at 43. And if he had received no role adjustment at all, his total offense level still would have been 41, which would have resulted in an advisory guideline range of 324 to 405 months' imprisonment. That range encompasses his ultimate sentence of 384 months. *See* U.S.S.G. Chapter 5, pt. A.

# DISCUSSION

Medina challenges the district court's decision to apply U.S.S.G. § 3B1.1(a)'s four-level enhancement to his sentence. Whether § 3B1.1(a)'s enhancement applies is a factual determination that we review for clear error. *United States v. Rubio-Sepulveda*, 781 F. App'x 769, 771 (10th Cir. 2019). "Factual findings are clearly erroneous only if they are without factual support in the record or if this court, considering all the evidence, is left with a definite and firm conviction that a mistake has been made." *United States v. Lozano*, 921 F.3d 942, 946 (10th Cir. 2019).

U.S.S.G. § 3B1.1(a) calls for a four-level sentencing enhancement "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive[.]" "In distinguishing a leadership or organizational role from one of mere management or supervision, titles such as 'kingpin' or 'boss' are not controlling." U.S.S.G. § 3B1.1(a), cmt. n.4. Instead, the guideline provides factors a court should consider, including:

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

*Id.* In its "Background" section, the guideline commentary notes that the range of role adjustments varies "based upon the size of the criminal organization (i.e., the number of participants in the offense) and the degree to which the defendant was responsible for committing the offense." *Id.*

We may look at whether the defendant could recruit drug sellers, control their work, and pay them "on behalf of the conspiracy[.]" *See United States v. Sallis*, 533 F.3d 1218, 1223 (10th Cir. 2008). We may also consider whether the defendant controlled how the drugs were sold, who set the prices, and who obtained what share of the profits. *Id.*

But in reviewing these factors, we remain aware that the key inquiry is "control, organization, and responsibility for the actions of other individuals because § 3B1.1(a) is an enhancement for organizers or leaders, not for important or essential figures." *Id.* (quoting *United States v. Torres*, 53 F.3d 1129, 1142 (10th Cir. 1995)). The mere fact that a defendant "had *some* authority to coordinate or control others is not enough to qualify him as a § 3B1.1(a) 'organizer or leader.'" *Rubio-Sepulveda*, 781 F. App'x at 773. The enhancement "applies only when the defendant had 'decision-making authority or control over a subordinate.'" *United States v. Pena-Hermosillo*, 522 F.3d 1108, 1112 (10th Cir. 2008) (quoting *United States v. Roberts*, 14 F.3d 502, 524 (10th Cir. 1993)). In other words, we look not just for the "mere *existence*" of control but rather "*the degree*." *Rubio-Sepulveda*, 781 F. App'x at 774 (emphasis in original). Thus, one's "role as a supplier of drugs to others, standing alone, is not enough to justify the leader enhancement." *Sallis*, 533 F.3d at 1223–24 (cleaned up).

Though Medina acknowledges his involvement in the drug operation, he argues that there is insufficient evidence to justify § 3B1.1(a)'s application because he wasn't an "organizer or leader." According to Medina, he acted merely as a

5

mouthpiece for his boss, Geraldo Bustamante. Medina contends that no evidence shows that he controlled other participants, paid the sellers, or set the price of the drugs.

The factors identified by the guidelines and in our cases are neither mandatory nor exclusive. *See United States v. Wacker*, 72 F.3d 1453, 1476 (10th Cir. 1995) ("The Guidelines do not require that each of these factors be satisfied for a section 3B1.1 enhancement to apply."). And in any event, Medina fails to acknowledge the government's evidence submitted to the court at the sentencing hearing.

There, the government submitted recordings of ten intercepted phone calls that highlighted Medina's leadership authority in the drug operation. In one call, Medina and one of his buyers, Rogelio Velasquez, discussed the arrangements of another drug sale.[5]

- In that call, Medina noted how one of his couriers had started working for someone else, but that he had "already found another guy" who could deliver drugs into the United States within a week. Appellee R. vol. 1 at 106–07.

- Medina also explained to Velasquez that he was "forming the team there." Appellee R. vol. 1 at 108.

In another call, Velasquez mentioned that an associate wanted him to start buying drugs from someone other than Medina. But Velasquez said he would continue to purchase from Medina.

- In that call, Medina mentioned that it was becoming expensive to pay his couriers because it was costing him $20,000 for each trip.

---

[5] Velasquez "was believed to be the principal source of supply for the leading members of the [Irish Mob Gang]." Appellee R. vol. 2 at 12.

> Appellee R. vol. 1 at 117 ("It's just that the trip is expensive to me. Every time I send the boy, I have to pay 20,000 dollars for the trip.").

- Medina also assured Velasquez that his courier was reliable and would help Velasquez with the logistics of his drug sales. Appellee R. vol. 1 at 116–18 ("Well, all right. Or I am going to call that boy to see if the boy can help you out from over there, for you to come over, then for you to talk it over with the boy, and for the boy to do your errands.").

And in another call, Velasquez told Medina that his money was ready to be picked up.

- Medina said that he would have his courier pick up the money.

- In that same call, Medina told Velasquez that a large supply of his drugs had been raided while they were being loaded on the plane. But Medina also mentioned to Velasquez to be ready with money because he will "supply [him] big time." Appellee R. vol. 1 at 143.

Considering this evidence, the district court did not clearly err by applying § 3B1.1(a)'s four-level enhancement. The court had plenty of evidence that Medina had acted as an "organizer or leader"—he recruited accomplices, had the authority to control their activities, and paid them on behalf of the conspiracy.

And though Medina insists that he was acting only at the behest of Mr. Bustamante, the district court rejected that argument. It found that the "notion of some Keyser Soze out there who is the true hand that is guiding all of this is absolutely frivolous and without merit."[6] Appellant R. at 231–32. Given the

---

[6] In the film *The Usual Suspects*, "Keyser Soze" is a legendary crime lord who had manipulated other criminals and eluded police capture for years.

government's evidence and that § 3B1.1 recognizes that "[t]here can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy," that conclusion was not clearly erroneous. U.S.S.G. § 3B1.1(a), cmt. n.4.

In sum, we are not "left with a definite and firm conviction" that the district court clearly erred by applying § 3B1.1(a)'s enhancement at Medina's sentencing.[7]

## CONCLUSION

For these reasons, we affirm.

Entered for the Court

Gregory A. Phillips<br>
Circuit Judge

---

[7] The government also argues that any error in applying the four-level enhancement would be harmless because, in its view, Medina would still qualify for a three-level enhancement under § 3B1.1(b). That enhancement applies to a "manager or supervisor (but not an organizer or leader)." U.S.S.G. § 3B1.1(b). With a three-level role adjustment, Medina's total offense level would remain at 43. But because we conclude that the district court did not clearly err in applying § 3B1.1(a), we have no reason to evaluate § 3B1.1(b).

UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157
Clerk@ca10.uscourts.gov

Christopher M. Wolpert
Clerk of Court

Jane K. Castro
Chief Deputy Clerk

March 2, 2022

Mr. John D. Kirby
401 West A Street, Suite 1150
San Diego, CA 92101

**RE:**     **21-6043, United States v. Escarsiga**
            Dist/Ag docket: 5:18-CR-00260-SLP-3

Dear Counsel:

Enclosed is a copy of the order and judgment issued today in this matter. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. Rule 40(a)(1), any petition for rehearing must be filed within 14 days after entry of judgment. Please note, however, that if the appeal is a civil case in which the United States or its officer or agency is a party, any petition for rehearing must be filed within 45 days after entry of judgment. Parties should consult both the Federal Rules and local rules of this court with regard to applicable standards and requirements. In particular, petitions for rehearing may not exceed 3900 words or 15 pages in length, and no answer is permitted unless the court enters an order requiring a response. *See* Fed. R. App. P. Rules 35 and 40, and 10th Cir. R.35 and 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

                                                         Sincerely,

                                                         Christopher M. Wolpert
                                                         Clerk of Court

cc:     Steven W. Creager
         David McCrary

CMW/sls